OPINION
Defendant-appellant, Deborah Mackey, appeals her conviction in the Warren County Court of Common Pleas for attempted murder and child endangerment. For the reasons that follow, we affirm.
On December 14, 1998, appellant gave birth prematurely to a baby girl in a bathroom stall at the manufacturing plant where she worked in Franklin, Ohio. When she gave birth, appellant was thirty-four weeks pregnant. Appellant never told anyone she was pregnant, including the father of the child.
The delivery of the child lasted approximately two hours. During the course of the birth, appellant's supervisor and two co-workers entered the restroom separately to check on her. Appellant first indicated that she had simply started menstruating. Later, she stated that she was very ill and needed to go home. She never told them that she was giving birth to a child.
After appellant successfully delivered the child, she wrapped the infant, still attached to the umbilical cord and the placenta, in paper towels. Appellant carefully wiped all of the blood from the floor of the bathroom stall. Appellant then placed the living child and the bloody paper towels in the bathroom garbage can. Appellant washed her hands and exited the restroom. She covered the seat of her car with a plastic bag, put on her sunglasses, and drove home. Appellant told no one that she had just given birth to a child.
Ethel Creager, a custodian at the plant, later discovered the baby while cleaning the women's restroom. Creager was preparing to remove the trash from the restroom when she heard a baby crying. She placed the trash bag on the floor, opened it, and looked inside where she noticed the baby's head wrapped in bloody paper towels. Creager immediately reported her discovery to a supervisor. Together, they wrapped the baby in a coat and then summoned the police and paramedics.
The baby was taken to Children's Hospital in Dayton, Ohio. At the hospital, doctors diagnosed the child with pre-natal depression, hypothermia, respiratory distress, and frostbite on her left hand and both feet.
When appellant arrived home in Middletown, she concealed from her live-in boyfriend that she had given birth to their child at work hours earlier. Later that evening, two Middletown police officers were dispatched to her residence to assist the Franklin police in their investigation of the abandoned baby. Appellant told the officers that she had not been pregnant and insisted that she was only having cramps and feeling very ill. However, appellant consented to medical observation at Middletown Regional Hospital. While in the ambulance, in the presence of a police officer, appellant admitted for the first time to a paramedic that she had been pregnant. At the hospital, Officer Rick Thacker of the Franklin police interviewed appellant. During the interview, appellant recounted the story of how she gave birth and abandoned the baby.
On January 11, 1999, appellant was indicted on one count of attempted murder in violation of R.C. 2923.02(A) and 2903.02(A), and one count of attempted involuntary manslaughter in violation of R.C. 2923.02(A) and 2903.04(A). Appellant was also indicted on one count of endangering children in violation of R.C. 2919.22(A). Appellant pled not guilty by reason on insanity to all of the charges.
On February 4, 1999, the trial court granted the state's motion requesting that the Butler County Center for Forensic Psychiatry evaluate appellant's competency to stand trial and her sanity at the time of the offense pursuant to R.C. 2945.371. On February 5, 1999, the trial court granted appellant's motion requesting that forensic psychologist, Kenneth J. Manges, Ph.D., perform the same evaluations.
On February 24, 1999, Dr. Manges provided to the trial court his analysis of appellant's competency and sanity. Dr. Manges concluded that appellant was not competent to stand trial because she would be unable to assist her attorney with her own defense. Dr. Manges also determined that appellant suffered from a "Major Depressive Disorder" and "Dissociative Amnesia." Dr. Manges concluded that these conditions precluded appellant from having the capacity to form the intent to commit the crimes for which she was charged.
Bobbie G. Hopes, Ph.D., filed a report on behalf of the Butler County Center for Forensic Psychiatry on February 25, 1999. Dr. Hopes opined that appellant was competent to stand trial. Dr. Hopes also concluded that, while appellant was not mentally ill or mentally retarded, she suffered from "Schizotypal Personality Disorder." Dr. Hopes further noted that this disorder could cause appellant to experience "transient psychotic symptoms during periods of crisis."
On February 24, 1999, the trial court, pursuant to R.C.2945.371, ordered appellant to undergo a twenty-day evaluation at the Pauline Warfield Lewis Center to evaluate further her competency to stand trial. In an evaluation filed on March 25, 1999, Jean Cooper, M.D., concluded that appellant understood the nature of the proceedings against her and that she was capable of assisting in her own defense.
At a hearing conducted on March 25, 1999, the trial court found appellant competent to stand trial based on a review of the reports filed by Drs. Manges, Hopes and Cooper.
On March 2, 1999, the trial court also granted the state's motion requesting that Thomas Martin, Ph.D., conduct an additional forensic evaluation of appellant's mental capacity at the time of the alleged offenses. Appellant challenged the fourth evaluation as unduly burdensome and filed a motion for a protective order to prevent additional forensic evaluations. The trial court denied appellant's motion on March 3, 1999. Dr. Martin filed a report on April 16, 1999 in which he concluded that appellant did not suffer from a mental disease or deficiency at the time she abandoned the baby. Subsequent to Dr. Martin's evaluation, Dr. Hopes reevaluated appellant, but her opinion as to appellant's lack of criminal capacity remained unchanged.
Appellant was tried to the bench on May 3 and 4, 1999. At the beginning of the trial, the state voluntarily dismissed, without objection, the charge of attempted involuntary manslaughter. The trial court found appellant guilty of the remaining charges, attempted murder and child endangering. The trial court sentenced appellant to six years in prison for attempted murder and a concurrent term of three years in prison for child endangering. From this judgment, appellant timely filed an appeal and presents one assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ITS JUDGMENT OF GUILTY ON THE CHARGES OF ATTEMPTED MURDER AND ENDANGERING CHILDREN WHERE APPELLANT WAS DENIED A FAIR TRIAL THROUGHOUT THE ENTIRE PROCEEDINGS [sic].
In support of her sole assignment of error, appellant raises four separate issues for our review. We will address each issue in turn.
In her first issue, appellant challenges the trial court's decision to grant the state's motion for a second forensic evaluation. Appellant asserts that the additional evaluation was inherently unfair because it allowed the state to "shop" for favorable expert testimony. Appellant also contends that she had the right to obtain a second independent psychiatric examination since the trial court granted a second examination on behalf of the state.
R.C. 2945.371 governs evaluations of a criminal defendant's mental condition. The statute provides, in relevant part:
 (A) If the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order one or more evaluations of the defendant's present mental condition or, in the case of a plea of not guilty by reason of insanity, of the defendant's mental condition at the time of the offense charged. An examiner shall conduct the evaluation.
 (B) If the court orders more than one evaluation under division (A) of this section, the prosecutor and the defendant may recommend to the court an examiner whom each prefers to perform one of the evaluations. If a defendant enters a plea of not guilty by reason of insanity and if the court does not designate an examiner recommended by the defendant, the court shall inform the defendant that the defendant may have independent expert evaluation and that, if the defendant is unable to obtain independent expert evaluation, it will be obtained for the defendant at public expense if the defendant is indigent.
R.C. 2945.371(A) and (B). Since the trial court "may" order "one or more" evaluations of a defendant's mental condition, the number of evaluations to be conducted is left to the sound discretion of the trial court. See State v. Hicks (1988), 38 Ohio St.2d 129,131 (interpreting similar language under former R.C. 2945.39). Thus, we review a trial court's decision to grant one or more evaluations of a defendant's mental condition for abuse of discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
If the court orders more than one evaluation, the defendant is entitled to recommend an examiner to the court. R.C. 3945.371 [2945.371]. If the court does not designate an examiner recommended by the defendant and the defendant enters pleas of not guilty by reason of insanity, then the trial court has the duty to inform the defendant that she has the right to obtain an independent expert evaluation. Id. In such an instance, the state must provide access to independent expert evaluation if the defendant is indigent. Id. See, also, Ake v. Oklahoma (1985), 470 U.S. 68,74, 105 S.Ct. 1087, 1091-92.
The trial court ordered appellant to undergo a total of three separate evaluations to determine her mental capacity at the time of the offense. Since the trial court ordered more than one mental evaluation, each party was entitled to recommend a preferred examiner. Appellant recommended Dr. Manges and the state recommended Dr. Hopes.
Appellant pled not guilty by reason of insanity. The record also demonstrates that appellant is indigent. Therefore, the trial court had a duty to either designate an examiner recommended by appellant or inform her that she had a right to an independent evaluation provided by the state. The trial court complied with its obligation by providing appellant an independent examination with her preferred examiner, Dr. Manges.
At the conclusion of mental evaluations, both experts basically concluded that appellant had a diminished mental capacity at the time of the offense. Thereafter, pursuant to a motion by the state, the trial court ordered appellant to submit to the evaluation by Dr. Martin. We conclude that the trial court did not abuse its discretion by granting the state's request for one additional evaluation. Since appellant's mental capacity was an important issue in this case, we do not find the trial court's action to be unreasonable, arbitrary, or unconscionable.
In addition, the trial court complied completely with the requirements of R.C. 2945.371 and was under no obligation to provide appellant automatically with more than one independent mental evaluation.[1] R.C. 2945.371 mandates that the trial court must provide an independent mental evaluation only when a defendant enters a plea not guilty by reason of insanity, the trial court fails to appoint the examiner of the defendant's choosing, and the defendant is indigent. The language of the statute is unambiguous, and its meaning is clear. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, the statute is to be applied as written.Bernardini v. Board of Edn. (1979), 58 Ohio St.2d 1, 4; Red TopBrewing Co. v. Peck (1952), 158 Ohio St. 259, 264. Accordingly, we find that appellant's first issue for review lacks merit.[2]
In her second issue presented for review, appellant asserts that she was denied effective assistance of counsel. In support of her argument, appellant contends that her trial counsel committed errors of such magnitude that, taken as a whole, "certainly and substantially" prejudiced her case.
To establish a claim of ineffective assistance of counsel, appellant must first show that her counsel's actions were outside the wide range of professionally competent assistance. Stricklandv. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064. Second, appellant must demonstrate that she was prejudiced at trial as a result of counsel's actions. Id. at 689,104 S.Ct. 2065. To demonstrate prejudice, appellant must prove that, but for counsel's actions, there is a reasonable probability that the result of the proceeding would have been different. Id. at 694,104 S.Ct. at 2068. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of reasonable professional assistance. State v. Bradley (1989),42 Ohio St.3d 136, 143, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258. Moreover, "[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558.
Appellant first argues that trial counsel's decision to have her enter a single plea of not guilty by reason of insanity was a grievous error. She maintains that her trial counsel should have also entered a dual plea of not guilty. We find that counsel's decision not to enter a dual plea was a matter of strategy. In addition, appellant fails to show any reasonable probability that a plea of not guilty would have been successful, even though the trial court declined to find her not guilty by reason of insanity. As such, we conclude that counsel's decision not to enter a dual plea does not constitute deficient performance on the part of her trial counsel.
Appellant next maintains that trial counsel provided ineffective assistance by stipulating to the medical records concerning the baby, instead of questioning those who prepared them at trial. Appellant further asserts that trial counsel was deficient by failing to request a court-appointed medical expert to testify about the health of the baby and her appearance at birth. Appellant suggests that testimony about the condition of the premature infant could have supported her statements that she believed that she had miscarried. Generally, decisions to stipulate to facts or evidence are tactical decisions that fall within the wide range of reasonable professional assistance. SeeState v. Otte (1996), 74 Ohio St.3d 555, 565; State v. Green
(1993), 66 Ohio St.3d 141, 148. Moreover, counsel is not deficient by stipulating to facts for which there is ample evidence, or to evidence that is "unassailable." See Otte, 74 Ohio St.3d at 565.
Appellant has not shown a reasonable probability that, but for the stipulations, the result of the trial would have been different. The unassailable fact remains that appellant disposed of a baby in a trash can. In addition, appellant stated to the examiners that the baby was crying or whimpering, and that she wrapped the baby in paper towels to "protect" her. These statements were admitted into evidence through the experts and support the conclusion that appellant knew that the baby was alive. Therefore, we cannot say that trial counsel was deficient by stipulating to the evidence.
Appellant also cites as ineffective assistance trial counsel's failure to object to the state's dismissal of the attempted involuntary manslaughter charge. Involuntary manslaughter is a lesser included offense of murder. State v.Coulter (1992), 75 Ohio App.3d 219, 225. Failure to request an instruction on a lesser-included offense is a matter of trial strategy and does not establish ineffective assistance of counsel.State v. Griffie (1996), 74 Ohio St.3d 332, 333; State v. Clayton
(1980), 62 Ohio St.2d 45, 47, certiorari denied (1980),449 U.S. 879, 101 S.Ct. 227. A decision not to seek an instruction on a lesser-included offense is a calculated and reasonable trial strategy aimed at obtaining a complete acquittal. State v. Catlin
(1990), 56 Ohio App.3d 75, 79. Similarly, we conclude that failure to object to the withdrawal of the attempted involuntary manslaughter charge is a matter of trial strategy. Therefore, we find that counsel's failure to object to the withdrawal of the charge did not rise to the level of ineffective assistance of counsel and did not prejudice appellant.
Appellant's next claim of ineffective assistance involves her trial counsel's choices regarding defense witnesses. Appellant finds fault with counsel's decision to present only the testimony of Dr. Hopes. She argues that trial counsel should have called Dr. Manges as a defense witness to testify about his findings during appellant's competency evaluation. Appellant further asserts that trial counsel could have called family members to provide lay opinions regarding her mental condition or sanity.
Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics. State v. Coulter
(1992), 75 Ohio App.3d 219, 230; State v. Hunt (1984), 20 Ohio App.3d 310,312. Trial counsel obviously chose to call Dr. Hopes to support her insanity defense because the state originally recommended her as the examiner of their choice and, more importantly, she had never before testified on behalf of a defendant. Counsel also relied on the testimony of other state witnesses to demonstrate appellant's alleged dissociative mental state. Appellant has not demonstrated that her counsel's failure to subpoena the additional witnesses would have provided evidence or testimony that would have changed the result of her trial.
Appellant also complains that trial counsel was ineffective by conducting little or no cross-examination of some of the state's witnesses. Appellant asserts that counsel "essentially stood mute beside [her] while the prosecution presented its case" without cross-examining witnesses and or raising objections. The strategic decision not to cross-examine witnesses is firmly committed to trial counsel's judgment. Otte,74 Ohio St.3d at 565. Trial counsel does not need to cross-examine every witness, and, in fact, limited or no cross-examination of a witness may be the best strategy. See id. In addition, failure to make objections does not automatically constitute ineffective assistance, as that failure may be justified as a tactical decision. State v. Gumm (1995), 73 Ohio St.3d 413, 428. We disagree with appellant's characterization that trial counsel "stood mute beside her." The record discloses that counsel conducted a thorough cross-examination of the state's expert witness and reasonably limited the cross-examination of other witnesses to elicit testimony to support appellant's insanity defense. Appellant also has not demonstrated how counsel's objections to testimony would have led to the exclusion of evidence that would have affected the outcome of the trial. Consequently, we do not find that trial counsel's failure to conduct more cross-examination or raise more objections amounted to ineffective assistance of counsel.
Appellant next argues that trial counsel should have filed motions to suppress on the grounds that she made statements to the investigating police officers without receiving any Miranda
warnings. Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel.State v. Lester (1998), 126 Ohio App.3d 1, 6. The party asserting a claim of ineffective assistance must first demonstrate that the failure to file such a motion caused him prejudice. Id.
Appellant has failed to demonstrate that the statements were the result of custodial interrogation, thus requiring the police to give her Miranda warnings. Moreover, appellant offers nothing in the record indicating that the officers did not advise appellant of her rights. "The Sixth Amendment right to effective assistance of counsel does not require defense counsel to file a motion to suppress evidence where none of the defendant's constitutional rights were violated." State v. Frazier (Nov. 25, 1996), Butler App. No. CA96-02-023, unreported, at 7, 1996 WL 679700. As appellant has not demonstrated that counsel's failure to file a motion to suppress caused her prejudice, we cannot conclude trial counsel was ineffective.
Appellant bases her last claim of ineffective assistance of counsel on trial counsel's failure to request an additional independent mental evaluation after the trial court granted the state's motion to conduct an additional evaluation. Appellant again fails to meet her burden to show how such a motion, if made, would have changed the outcome of her trial. Appellant had favorable expert testimony from the expert of her choice, and the examiner recommended by the state. In light of these facts, we do not find that the actions of trial counsel fell below the objective standard of reasonable representation.
Since none of the examples cited by appellant individually meets the test for a claim of ineffective assistance of counsel, we conclude that their cumulative effect did not deprive appellant of effective legal representation. Accordingly, we find that appellant's second issue for review is without merit.
In her third issue for review, appellant claims that she was denied a fair trial because the record reveals that the trial judge was not fair and impartial. It appears that appellant argues that the trial judge should have been disqualified due to an alleged bias or prejudice against abortions. In support of her claim, appellant cites a reference to abortion made by the judge during the sentencing hearing:
 The argument that this lady suddenly became insane for an hour or so that day is simply not believable and does not supply an explanation.
 Perhaps this incident and other similar incidents that we read about in the paper can be somewhat explained by the ease with which abortions, especially late-term abortions, are obtainable in our society today. Perhaps these tend to desensitize some people to the preciousness of every human life.
 Probably searching for an explanation here is futile. The important thing that must be made clear is that our society will not condone, at least not yet, disposing of an unwanted baby in the nearest trash can.
The Chief Justice of the Ohio Supreme Court, or his designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced. Section 5(C), Article IV, Ohio Constitution. R.C. 2701.03 provides the exclusive means by which a litigant may claim that a common pleas court judge is biased and prejudiced. State ex rel. Pratt v. Weygandt (1956),164 Ohio St. 463, paragraph three of the syllabus; Jones v.Billingham (1995), 105 Ohio App.3d 8, 11. A litigant who believes that the trial judge should be disqualified must file an affidavit of bias or prejudice with the clerk of the supreme court pursuant to R.C. 2701.03. Id. Since only the Chief Justice or his designee may hear a disqualification matter, a court of appeals is without authority to void the judgment of the trial court because of bias or prejudice of the judge. Beer v. Griffith (1978),54 Ohio St.2d 440, 441-42.
Appellant's exclusive remedy if she believed that the trial judge was biased or prejudiced against her at any stage of her trial was to file an affidavit of disqualification pursuant to R.C. 2701.03. Therefore, we are without jurisdiction to decide the merits of appellant's third issue.
Appellant's final issue for review claims that her waiver of trial by jury was not voluntary, knowing or intelligent because Dr. Manges opined that she was not competent to stand trial. Appellant argues that this opinion precludes any finding that she knowingly, voluntarily waived her right to a trial by a jury.
Crim.R. 23(A) states: "In serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily waive in writing his right to trial by jury." See, also, State v. Bays (1999), 87 Ohio St.3d 15, 19. Where a defendant elects to waive the right to a jury trial, R.C. 2945.05
mandates that the waiver must be in writing, signed by the defendant, filed in the action and made part of the record. See, also, State v. Pless (1996), 74 Ohio St.3d 333, paragraph one of the syllabus.
In Ohio, R.C. 2945.37 protects a defendant's right not to be tried or convicted while incompetent. State v. Berry (1995),72 Ohio St.3d 354, 359. R.C. 2945.37(G) provides, in part:
 A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial * * *.
In order to overcome the presumption of competence in R.C.2945.05(G), a defendant has the burden of proving that he is incompetent by a preponderance of the evidence. See State v.Williams (1986), 23 Ohio St.3d 16, 19
On March 25, 1999, the trial court determined that appellant was competent to stand trial after reviewing the evaluations provided by Drs. Manges, Hopes and Cooper. Dr. Manges was the only expert that opined that appellant was incompetent to stand trial. On April 16, 1999, appellant waived her right to a jury trial in open court and executed a written waiver that was made part of the record of this case. At the hearing, the trial court carefully questioned appellant about her decision in order to ascertain that her choice was knowing, intelligent and voluntary. On May 3, 1999, before the beginning of her trial, the trial judge again carefully questioned appellant about her choice to waive trial by a jury. Appellant verified that she still wanted to proceed without a jury. Since the trial court determined appellant was competent to stand trial and carefully followed the mandates of R.C. 2945.05, we find that appellant voluntarily, knowingly and intelligently waived her right to a trial by a jury. Therefore, appellant's fourth issue for review is without merit.
Appellant's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, J., concurs.
WALSH, J., concurs separately.
[1] We note that appellant did not request any additional evaluations from the trial court. Appellant only argues that she had a statutory right to another independent mental examination, "which she was never afforded." We simply conclude that no such automatic right exists under R.C. 2945.371.
[2] We note that in her reply brief, appellant appears to argue for the first time with respect to her first issue that she was denied equal protection when the trial court ordered her to submit to Dr. Martin's examination. We find that appellant's new sub-argument is raised improperly by way of the reply brief. The reply brief is merely an opportunity to reply to the brief of the appellee, and is not to be used by an appellant to raise new assignments of error or issues for review. See App.R. 16(C);Sheppard v. Mack (1980), 68 Ohio App.2d 95, 97. Appellant's argument is not appropriately before the court and will therefore not be considered.